FARMERS COOPERATIVE COMPANY (SUCESSOR-IN-NAME TO FARMERS CO-OP OIL COMPANY), PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 15643-82.     Filed September 29, 1987.

*Richard S. Wheeler* and *Stanley W. Rosenkranz,* for the petitioner.
*Ruud L. DuVall,* for the respondent.

---

OPINION

GERBER, *Judge*: This opinion is necessitated by a mandate, issued July 22, 1987, from the U.S. Court of Appeals for the Eighth Circuit affirming in part, reversing in part, and remanding for proceedings consistent with their opinion rendered regarding an appeal from our opinion in *Farmers Cooperative Co. v. Commissioner*, 85 T.C. 601 (1985) (Farmers I).

In Farmers I we held that two separate cooperatives[1] did not qualify as exempt cooperative associations under section 521[2] because "substantially all" of their capital stock was not owned by producers who market their products or purchase their supplies through the cooperatives. Our holding was premised on an "85-percent test" to meet the "substantially all" requirement of section 521 as published by respondent in Rev. Rul. 73-248, 1973-1 C.B. 295, and approved in *West Central Cooperative v. United States*, 758 F.2d 1269, 1271 (8th Cir. 1985); also see discussion in Farmers I, 85 T.C. at 612-617. In applying this petitioner's facts to the "85-percent test," we did not give credit for patrons who became entitled to (but had not been issued) capital stock due to patronage during the year in question, and we did include those who owned capital stock but did not patronize. Because neither of the petitioners in Farmers I was found to have met the 85-percent test, we did not consider the second part of the statutory requirement that the patrons be current and active.

The U.S. Court of Appeals for the Eighth Circuit held that "for purposes of applying the 85% test, the relevant consideration is whether the right to vote has actually accrued or been terminated by the time of the annual shareholder's meeting following the close of the tax year." *Farmers Cooperative Co. v. Commissioner*, 822 F.2d 774, 779 (8th Cir. 1987), affg. in part, revg. in part, and

---

[1]Farmers I involved the consolidated cases of two cooperatives (Farmers Cooperative Co. and Farmers Cooperative Society) with similar issues. The cases had been consolidated for purposes of briefing and opinion. Our opinion was unfavorable to both petitioners, but only Farmers Cooperative Co. appealed and is the subject of this remand and opinion.

[2]All statutory references are to the Internal Revenue Code of 1954 as amended and in effect for the taxable year in issue, unless otherwise indicated.

remanding 85 T.C. 601 (1985). Based on that standard, petitioner was found to have met the 85-percent test for 1 (1977) of the 2 years in issue. Because of this finding, the matter is remanded to us for consideration of the second part of the statutory requirement regarding the quantity of business, if any, that patrons are required to conduct with the cooperative.

A cooperative will not lose its exempt status because it has capital stock, "if substantially all such stock * * * is owned by producers who market their products or purchase their supplies and equipment through the association." Sec. 521(b)(2). Respondent quantified the "substantially all" requirement in a revenue ruling (Rev. Rul. 73-248, *supra*) and the patronage test in a revenue procedure. In Rev. Proc. 73-39, 1973-2 C.B. 502, respondent published an examination guideline of 50-percent patronage.[3] Respondent, for litigating purposes in a case presented and briefed prior to the issuance of Rev. Proc. 73-39 argued, "that *substantially all* of the shareholder-producers must market *substantially all* of their products and purchase *substantially all* of their supplies through the cooperative," but the Eighth Circuit suggested "that imposition of the [the substantially all standard for patronage purposes] could produce impractical and perhaps oppressive results." *Co-Operative Grain & Supply Co. v. Commissioner*, 407 F.2d 1158, 1164 n. 10 (8th Cir. 1969), remanding on another issue a Memorandum Opinion of this Court. In declining to address this issue in Farmers I, we noted "that consideration of this area is fraught with many difficulties and problems. Does respondent contemplate that cooperatives will keep track of shareholders' transactions outside the cooperative in order to police the 50-percent test * * * ? Would cooperatives

[3]The Rev. Proc. 73-39 guideline is expressed as follows:

"In the examination of returns, the Service will consider stock owned by persons who market more than 50 percent of particular products they have produced and marketed through the cooperative, or who purchase from the cooperative more than 50 percent of their supplies and equipment of the type handled by the cooperative, during the cooperative's taxable year, as being owned by 'producers who market their products or purchase their supplies and equipment through the association * * * [1973-2 C.B. 502.]' "

The revenue procedure goes on to outline three situations where the 50-percent standard is not met and the exempt status will be permitted by respondent. The specific exceptions include crop failure, sickness, or death and where the cooperative sells high price items which are not usually purchased on an annual basis (farm machinery).

effectively serve their congressionally intended purpose if patrons were required by contract to transact a minimum amount of business with the cooperative?" 85 T.C. at 617 n. 11.

Petitioner's records reflect the amount of marketing or purchasing business transacted by each patron with petitioner each year, but not the amount of a patron's total marketing or purchasing business with or from all entities or sources for the same year. It would be impossible for petitioner to determine from its records whether any patron met the 50-percent test.

With this background, we must consider whether the respondent's "50-percent patronage test" comports with the plain language of the statute or the underlying congressional intent. If not, we must determine whether any minimum annual quantity of patronage is statutorily required or intended.

## Statutory Background

Exempt status for cooperative associations within the context of Federal taxing statutes is a concept which has been in existence for more than 65 years, beginning before the Revenue Act of 1921, 42 Stat. 227. The "substantially all" requirement has been a part of the statutory scheme since the Revenue Act of 1926, 44 Stat. 9, 40,[4] under circumstances where the cooperative was "owned" by means of capital stock. Permitting cooperatives to be corporate entities and to act for the benefit of individuals other than cooperative members was a liberalization permitted in Treasury Department regulations under the Revenue Act of 1921. Congress permanently codified this liberalization in section 231(12) of the Revenue Act of 1926 which is essentially unchanged in its present form in section 521. The Senate Committee on Finance in discussing the need for this codification as part of the Revenue Act of 1926, commented:

---

[4]Sec. 231(12) of the Revenue Act of 1926, 44 Stat. 9, and sec. 103(12) of the Revenue Act of 1928, 45 Stat. 791, 813, both contained language identical to that contained in current sec. 521, as follows:

"Exemption shall not be denied any such association because it has captial stock * * * if substantially all such stock * * * is owned by producers who market their products or purchase their supplies and equipment through the association."

Section 231(12): The existing law, strictly construed, allows exemption only to those farmers', fruit growers' or like associations which act as sales or purchasing agents for producer members and which return to such members the entire proceeds of their operations, except necessary sales or purchasing expenses. However, in order that any such association, not operated for profit, and which is a true cooperative association, shall get the benefit of this exemption, the Treasury Department in its regulations has construed the existing law with great liberality, enlarging the term "member" to mean any producer whether or not a member, if treated by such an association on the same basis as a member; exempting such an association not acting as an agent, but taking title to products or supplies; allowing such associations to have outstanding capital stock and to pay dividends on such stock (subject to certain limitations); permitting such associations to build up reserves for State requirements or other necessary purposes; and allowing such associations to manufacture their products, to change the form of raw materials, and in some cases to operate subsidiaries, *so long as the operations are not conducted on an ordinary profit-making basis*. [Senate Comm. on Finance, S. Rept. 52, 69th Cong., 1st Sess. 23 (1926), 1939-1 C.B. (Part 2) 332, 350. Emphasis supplied.]

Respondent, in Mim. 3886, X-2 C.B. 164, declared obsolete by Rev. Rul. 74-268, 1974-1 C.B. 367, expressed his understanding of the purposes of the exempt cooperative provisions in conjunction with the liberalization contained in the Revenue Act of 1926. In that context, respondent observed that exempt cooperatives could retain their nonprofit status and have dealings with nonmembers so long as the net proceeds of transactions were passed back through to members and nonmembers alike. This, obviously, would maintain the nonprofit and conduit-like existence of the cooperative. Continuing in this vein, respondent further observed:

If an association is permitted to have nonproducers as stockholders and accumulate a surplus at the same time, the principle that a producer shall have returned to him the proceeds of the sale of his products less only necessary operating expenses is violated. This follows as a result of the established principle of law that the surplus of a stock corporation inures to the benefit of its stockholders. * * * Therefore, where associations are permitted by law to organize with capital stock, it is essential to exemption that the ownership of capital stock which carries the right to participate in the surplus and reserves of the association be restricted, as far as possible, to actual producers. [Mim. 3886, X-2 C.B. 164, 167, declared obsolete by Rev. Rul. 74-268, 1974-1 C.B. 367.]

From this type reasoning the respondent formulated the regulations which were eventually codified into the "substantially all" requirement of section 521.

The central concern in the commentary surrounding the enactment of these statutory provisions was to insure that the cooperative operated as an aid to farmers and others who sought to improve their effectiveness by joining to market and store products or to purchase equipment and supplies, rather than to operate on a profit-making basis. Clearly, congressional intent was to permit such cooperative efforts and, in addition, to provide certain tax exemptions. Conceptually, the means to regulate these goals was to maintain the "conduit-like" operation of exempt cooperatives. The "substantially all test" focused upon the cooperative entity's exempt (nonprofit) and conduit-like status and not upon the member's status. We are at a loss to understand respondent's concern about the percentage or amount of their total business activity that each member or patron conducts with each cooperative. We are unable to perceive, and respondent has not suggested, any evil that may arise from patrons or members belonging to many cooperatives or only conducting a small portion of their total business activity with a cooperative. Presumably, the members or patrons are taxable and profit seeking activities,[5] and respondent's proposed minimum patronage requirement may restrict patrons' flexibility and ability to seek and generate profits. Moreover, we are unable to find any meaningful purpose for a minimum patronage requirement in fulfilling congressional intent regarding cooperative associations. Respondent's patronage concerns or requirements did not surface until nearly 50 years after the statute was enacted. Respondent's publication of the 50-percent patronage requirement in a 1973 revenue procedure is the first mention of a percentage patronage requirement.[6]

---

[5]Although the possibility of cooperative membership within another cooperative may exist, the ultimate patron or member would be a taxable entity or within the existing statutory framework there may be an incidence of tax to a cooperative entity that does not operate as a "conduit."

[6]Respondent's publication of the 50-percent patronage requirement in a revenue procedure for audit purposes, rather than publishing it as a ruling or regulation, suggests that it has not been offered as a rule or law. Although the 85-percent "substantially all test" has been judicially approved even though originally published in a revenue ruling, no such judicial approval has been afforded to the 50-percent test of the revenue procedure. We think it inappropriate for respondent to include these standards in pronouncements which have less

Respondent contends, on brief, that disregarding "the 50% Test in Rev. Proc. 73-39 would be to negate the plain intent of the Congress as stated in Code [section] 521(b)(2) to the effect that the stock must be owned by producers 'who market their products or purchase their supplies and equipment through the association.' " Respondent carries his analysis a step further by arguing that Congress would have used a modifier (such as "some of") in conjunction with the "who market [some of] their products" or "who purchase [some of] their supplies." We do not agree with respondent's analysis or interpretation of the statute. The patronage requirement of section 521(b)(2) is itself a modifier of the principal requirement that "substantially all such stock * * * is owned by producers." We find the purpose of the patronage requirement to be qualitative and not quantitative. Obviously, the omission of a patronage requirement would not facilitate the nonprofit or conduit-like quality that was congressionally intended. We find that the congressional intent would be served if "substantially all such stock * * * is owned by producers who market [any] of their products or purchase [any] supplies and equipment through the association."

The patronage dividend concept would return to the producer a proportionate percentage return based upon *any* amount purchased or marketed during the year. The statutory requirement is that substantially all of that patronage be from active stock-holding (voting) patrons. Although respondent considers his 50-percent patronage requirement to be liberal, we hold that it is congressionally unintended. Because respondent has not seen fit to promulgate this "requirement" in a regulation, there is no need for an invalidation holding. Considering the holding of the Eighth Circuit Court of Appeals and the foregoing, we hold that petitioner is exempt within the meaning of section 521 for its 1977 taxable year.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

stature than regulations which do have the force and effect of law. Revenue rulings and procedures are nothing more than the position of the respondent and for the most part are treated accordingly by taxpayers and courts.